1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7   AAA CABINETS & MILLWORKS,
INC., a Washington For-Profit        NO. 2:20-CV-0318-TOR
8   Company, and TIMOTHY
STEWART, an individual               ORDER GRANTING PLAINTIFFS'
9                                    MOTION FOR PARTIAL
                      Plaintiffs,    SUMMARY JUDGMENT AND
10                                   DENYING DEFENDANT'S MOTION
     v.                              FOR SUMMARY JUDGMENT
11
12   AMCO INSURANCE COMPANY,
an Iowa For-Profit Company,
13
                      Defendant.

14        BEFORE THE COURT are the parties' Cross Motions for Summary

15   Judgment (ECF Nos. 17, 19).  A hearing with telephonic oral argument was held

16   on August 12, 2021.  Todd S. Fairchild appeared on behalf of Plaintiffs.  Paul S.

17   Smith and Stephanie Andersen appeared on behalf of Defendant.  The Court has

18   reviewed the record and files herein, considered the parties' oral arguments, and is

19   fully informed.  For the reasons discussed below, Plaintiffs' Motion for Partial

20

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

Summary Judgment (ECF No. 17) is GRANTED, and Defendant's Motion for Summary Judgment (ECF No. 19) is DENIED.

## BACKGROUND

This case concerns a dispute over insurance policy coverage. In 2019, Plaintiffs AAA Cabinets & Millworks Inc. and Timothy Stewart (collectively the "Plaintiffs") were sued by Kitchen Cabinet Manufacturers Association ("KCMA") for alleged misuse of KCMA's federally registered certification mark (the "Underlying Litigation"). ECF No. 17 at 6. After being notified of the Underlying Litigation, Defendant refused to defend Plaintiffs. *Id.* at 7. Plaintiffs filed a Complaint on September 4, 2020, alleging Defendant breached its duty to defend. ECF No. 1. Plaintiffs filed the present motion on May 21, 2021, seeking summary judgment on their claim for breach of contract and an entry of declaratory judgment that Defendant was required to defend Plaintiffs in the Underlying Litigation. ECF No. 17. Defendant filed a cross Motion for Summary Judgment on June 6, 2019, seeking dismissal of all Plaintiffs' claims.[1] ECF No. 19. The following facts are not in dispute except where noted.

---

[1]    Defendant filed two nearly identical Motions for Summary Judgment. *See* ECF Nos. 14, 19. Of the two motions, ECF No. 19 complies with Local Rules while ECF No. 14 does not. Thus, the Court relies on ECF No. 19 for this Order.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

**FACTS**

Plaintiffs make and sell cabinets. ECF No. 17 at 6. KCMA is a non-profit entity that certifies cabinets that meet with certain industry standards. *Id*. In 2005–2006, Plaintiffs were certified manufactures under the KCMA certification program. ECF No. 18 at 5, ¶ 10. Under the program, Plaintiffs were licensed to use the federally registered KCMA certification mark to indicate their products complied with KCMA standards. ECF No. 21 at 3, ¶ 8. The licensing agreement expired on May 31, 2006, after which Plaintiffs were no longer permitted to use the KCMA certification mark. *Id*. at ¶ 9.

Plaintiffs held insurance policies underwritten by Defendant that provided commercial liability insurance, including coverage for "Personal and advertising injury," as defined by the Policy.[2] ECF No. 21 at 8, ¶ 29; at 9, ¶ 34. The Policy became effective on January 2, 2018 and was renewed annually; the current Policy was effective through January 2, 2021. *Id*. at 9, ¶ 30. In 2019, KCMA filed a complaint (the "Underlying Complaint") against Plaintiffs, alleging Plaintiffs impermissibly used the KCMA certification mark on cabinets made for a particular

---

[2]    The policies were nearly identical with respect to all relevant coverage provisions, insuring agreements, and exclusions; as such, the Court refers to them collectively as the "Policy." ECF No. 21 at 9, ¶ 32.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

project, and to advertise and win bids for future projects. *Id.* at 1, ¶ 1; at 3–4, ¶¶ 10–11. On January 31, 2020, Plaintiffs notified Defendant of the Underlying Litigation and requested defense and indemnity. *Id.* at 8, ¶ 25. After investigating possible claims coverage, Defendant notified Plaintiffs on March 20, 2019 and April 23, 2020 that the facts alleged in the Underlying Complaint did not give rise to coverage under the Policy and that Defendant did not have a duty to defend Plaintiffs in the Underlying Litigation. *Id.* at 8, ¶ 27.

Plaintiffs filed a Motion for Partial Summary Judgment on May 25, 2021, seeking an order declaring Defendant had a duty to defend Plaintiffs in the Underlying Litigation and an order of summary judgment as to liability on their claim for breach of contract. ECF No. 17. Defendant subsequently filed a cross Motion for Summary Judgment seeking dismissal of all of Plaintiffs' claims. ECF No. 19.

The crux of the parties' dispute is whether the Underlying Complaint contained factual allegations of a "Personal and advertising injury" that triggered Defendant's duty to defend. Plaintiffs argue the Underlying Complaint alleged three claims that fall within the scope of coverage under the Policy. ECF No. 17 at 7. Defendant argues there are no factual allegations that constitute a "Personal and advertising injury," and even if such facts are alleged, there are several Policy exclusions that bar coverage. ECF No. 19 at 2.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1

## DISCUSSION

2

### I.    Legal Standard

3        The Court may grant summary judgment in favor of a moving party who

4    demonstrates "that there is no genuine dispute as to any material fact and that the

5    movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

6    on a motion for summary judgment, the court must only consider admissible

7    evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

8    party moving for summary judgment bears the initial burden of showing the

9    absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

10    317, 323 (1986).  The burden then shifts to the non-moving party to identify

11    specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

12    *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

13    of evidence in support of the plaintiff's position will be insufficient; there must be

14    evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

15        For purposes of summary judgment, a fact is "material" if it might affect the

16    outcome of the suit under the governing law.  *Id.* at 248.  Further, a dispute is

17    "genuine" only where the evidence is such that a reasonable jury could find in

18    favor of the non-moving party.  *Id.*  The Court views the facts, and all rational

19    inferences therefrom, in the light most favorable to the non-moving party.  *Scott v.*

20    *Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 5

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### A.    Duty to Defend and Insurance Contract Interpretation

"In Washington, insurance policies are construed as contracts.  An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Massachusetts Bay Ins. Co. v. Walflor Indus., Inc.*, 383 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019) (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash. 2d 654, 665–66 (2000)).  Courts examine the terms of an insurance contract "to determine whether under the plain meaning of the contract there is coverage." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wash. 2d 567, 576 (1998).  Defined terms within a policy should be give their "plain, ordinary, and popular meaning." *Id*. (citation omitted).  "To determine the ordinary meaning of undefined terms, courts may look to standard English dictionaries." *Id*.  Where a term has both technical, legal meaning and plain, ordinary meaning, the ordinary meaning will prevail, unless it is clear the parties intended the legal meaning to apply. *Id*.

"[I]f the language of the policy is clear and unambiguous, the court must enforce the policy as it is written and may not modify the policy or create

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

ambiguity where none exists. *Walflor Indus., Inc.*, 383 F. Supp. 3d at 1156 (citation omitted). If there is an ambiguity, courts may consider extrinsic evidence of the parties' intent. *Kitsap County*, 136 Wash. 2d at 576. If an ambiguity remains after consideration of extrinsic evidence, the ambiguity is construed against the insurer. *Id*.

Washington courts have long held the duty to defend is broader than the duty to indemnify. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash. 2d 398, 404 (2010). "The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id*. (internal quotations and citation omitted). The insurer may not put its own interests ahead of the insured's. *Id*. However, the insurer is entitled to investigate the facts and dispute the insured's interpretation of the law. *Id*. If there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend. *Id*. If the facts or law are disputed, the insurer may defend under a reservation of rights while seeking a declaratory judgment it has no duty to defend. *Id*.

If a claim could fall within the policy's coverage, courts must examine the policy to determine whether a policy exclusion "clearly and unambiguously applies to bar coverage." *Walflor Indus., Inc.,* 383 F. Supp. 3d at 1156 (citation omitted).

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

1   If an exclusion applies, there is no duty to defend.  *Id*.  Exclusionary clauses are

2   strictly construed against the insurer.  *Id*.

3        **B.    Personal and Advertising Injury**

4        The parties dispute whether an advertising injury occurred that would trigger

5   coverage under the Policy.  Defendant argues coverage was not triggered because

6   the Underlying Complaint does not allege facts that would constitute an

7   "advertising injury" as defined by the Policy.  ECF No. 19 at 2.  Plaintiffs claim

8   the Underlying Complaint alleges three advertising injuries that fall within the

9   scope of the Policy's definitions.  ECF No. 17 at 7–8.

10       The Policy provides liability coverage for "personal and advertising injury,"

11  which is a defined term within the Policy.  ECF No. 21 at 10–11, ¶ 35.  According

12  to the definition, such an injury arises out of a limited set of offenses, three of

13  which are relevant here.  Those offenses include:

14       d. Oral or written publication, in any manner, of material that slanders
         or libels a person or organization or disparages a person's or
15       organization's goods, products or services;
         . . .
16       f. The use of another's advertising idea in your "advertisement"; or
         g. Infringing upon another's copyright, trade dress, or slogan in your
17       "advertisement".

18  *Id*.  The Policy defines "advertisement" as: "a notice that is broadcast or published

19  to the general public or specific market segments about your goods, products or

20  services for the purpose of attracting customers or supporters."  *Id*. at 10, ¶ 36.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

1    An advertising injury must occur in the course of advertising goods for sale

2    and must have a causal connection with the insured's advertising activities.

3    *Amazon.com Int'l, Inc. v. Am. Dynasty Surplus Lines Ins. Co.*, 120 Wash. App.

4    610, 617–18 (2004); *Everest & Jennings, Inc. v. Am. Motorists Ins. Co.,* 23 F.3d

5    226, 229 (9th Cir. 1994).  "[A]n injury that could have occurred independent and

6    irrespective of any advertising is not an advertising injury."  *Amazon.com Int'l,*

7    *Inc.*, 120 Wash. App. at 617.

8    Here, the Underlying Complaint repeatedly alleges the KCMA mark was

9    used in Plaintiffs' advertising.  Specifically, paragraph 58 alleges Plaintiffs

10    "intentionally used the counterfeit certification seals bearing the counterfeit

11    KCMA Marks on their cabinets and to advertise and promote their cabinets."  ECF

12    No. 18-4 at 16, ¶ 58.[3]  The Underlying Complaint also describes one of the rights

13    to which certified producers are entitled is use of the KCMA mark "to advertise

14    and claim that the cabinet is KCMA certified."  *Id*. at 9, ¶ 27.  In the Prayer for

15    Relief, KCMA sought injunctive relief to prevent Plaintiffs from advertising the

16    KCMA mark in relation to Plaintiffs' products and sought an order requiring

17    Plaintiffs to recall any advertising materials bearing the KCMA mark.  *Id*. at 25, ¶

18    _____

19    [3]    Due to overlapping bates stamps in the header of ECF No. 18-4, page

20    citations to this document refer to the page numbers found in the footer.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

104; at 27, ¶ C; at 28, ¶¶ D–E.  Clearly, KCMA alleged Plaintiffs were utilizing the certification mark in the course of advertising.

The Underlying Complaint also clearly alleges the KCMA mark was directed to specific market segments for the purpose of winning future business. For example, Plaintiffs allegedly "won bids to participate in cabinet manufacturing projects because of [their] untruthful claims that their cabinets are KCMA certified . . . ."  *Id*. at 15, ¶ 50; *see also id*. at 22, ¶ 89 (alleging Plaintiffs "falsely represented to third parties in bids that [they were] a member of KCMA and that [their] products were inspected and certified by KCMA"); at 3, ¶ 6 (alleging Plaintiffs "continued to claim and represent to [their] customers and potential customers, and other third parties that it is certified by KCMA").

Finally, the specified injury allegedly occurred due to Plaintiffs' advertising activities.  Specifically, KCMA alleged damage to its goodwill and reputation stemming from Plaintiffs' use of the KCMA mark on goods that were not actually certified.  *See, e.g., id*. at 17, ¶ 59.  The factual allegations claiming Plaintiffs submitted bids using the KMCA certification mark as an incentive to earn the business of potential customers is sufficient to establish the necessary causal connection between the alleged injury (*i.e*., the damage to KCMA's goodwill and reputation) and Plaintiffs' advertising activities.  Thus, the Underlying Complaint conceivably alleged an advertising injury as contemplated by the Policy.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    The Court next turns to the three separate claims that Plaintiffs argue are

2    conceivably alleged in the Underlying Complaint that triggered Defendant's duty

3    to defend.

4         *1. Disparaging Material*

5    Plaintiffs argue the Underlying Complaint alleged the continued use of the

6    KCMA mark on Plaintiffs' goods caused harm to KCMA's goodwill, which

7    equates to product disparagement. ECF Nos. 17 at 12; 27 at 18. Defendant argues

8    the Underlying Complaint does not allege facts of disparagement, but rather, the

9    opposite is alleged: that AAA attempted to benefit from using the KCMA marks.

10   ECF No. 19 at 6.

11   "A claim for product disparagement must allege: (1) a false statement; (2)

12   that impugns the quality or integrity of the plaintiff's goods or services; and (3)

13   special damages in the form of lost profits from the loss of specific sales to a

14   specifically identified purchaser that would have occurred but for that purchaser

15   hearing the false statement and declining to engage in that purchase." *Walflor*

16   *Indus., Inc.*, 383 F. Supp. 3d 1158 (citation omitted). The Underlying Complaint

17   conceivably meets each of these elements.

18   First, the Underlying Complaint alleges Plaintiffs falsely claimed its cabinets

19   were KCMA certified when they were not. ECF No. 18-4 at 10, ¶ 35; at 15, ¶ 51;

20   at 20, ¶ 80–81; at 22, ¶ 89. Next, the Underlying Complaint alleges Plaintiffs'

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

inferior goods posed threats to public safety, and the association of the KMCA mark with such goods will cause damage to KCMA's goodwill and reputation. *Id.* at 15–16, ¶¶ 53–54; at 17, ¶ 59; at 19, ¶ 72. Finally, the Underlying Complaint alleges potential economic harm stemming from Plaintiffs' continued false claims regarding certification. *Id.* at 19, ¶ 72; at 23, ¶ 94; at 26, ¶ 114.

While Defendant correctly notes the Underlying Complaint alleges that Plaintiffs attempted to trade on the goodwill of the KCMA certification mark (ECF No. 21 at 4–5, ¶ 15), the Underlying Complaint also contains allegations that Plaintiffs' inferior goods harmed the goodwill and reputation of the KCMA mark. ECF No. 18 at 10, ¶ 26. Until the disputed facts and law were resolved, Defendant had a duty to defend. *See Alea London, Ltd.*, 168 Wash. 2d at 404.

### 2. *Advertising Idea*

Plaintiffs next contend the Underlying Complaint states a claim for misappropriation of KCMA's advertising ideas because KCMA "unambiguously tied [Plaintiffs'] alleged use of the KCMA marks to its advertising." ECF No. 17 at 14. Defendant argues no facts allege Plaintiffs took KCMA's advertising ideas or methods of advertising for the purpose of soliciting business. ECF No. 26 at 13.

Misappropriation of an advertising idea may be "the wrongful taking of another's manner of advertising," "the wrongful taking of an idea concerning the solicitation of business and customers," or "the wrongful taking of the manner by

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1  which another advertises its goods or services." *Amazon.com Int'l, Inc.*, 120

2  Wash. App. at 616.  "The misappropriation must occur in the elements of the

3  advertisement itself—in its text, form, logo, or pictures—rather than in the product

4  being advertised." *Id*. (quoting *Iolab Corp. v. Seaboard Sur. Co*., 15 F.3d 1500,

5  1506 (9th Cir. 1994) (applying California law)) (quotation marks omitted).

6      Here, the Underlying Complaint reveals KCMA knew its mark functioned as

7  an incentive to future customers when used in advertising.  For example, in

8  describing permissible use of the KCMA certification mark by certified

9  manufacturers, paragraph 27 states "[t]he producer of that cabinet will also have

10  the ability to advertise and claim that the cabinet is KCMA certified."  ECF No.

11  18-4 at 9.  The Underlying Complaint goes on to allege Plaintiffs used to mark to

12  solicit business.  *See, e.g*., *id*. at 15, ¶ 50 (Plaintiffs "claimed to customers and

13  potential customers . . . that [they] produce[d] KCMA certified cabinets" and that

14  Plaintiffs "won bids to participate in cabinet manufacturing projects because of

15  [their] untruthful claims that their cabinets are KCMA certified"); at 16, ¶ 58

16  (Plaintiffs used the "counterfeit certification seals" to "advertise and promote their

17  cabinets.").  By impermissibly using the mark in bids, Plaintiffs infringed upon

18  KCMA's manner of advertising its services.  Thus, the Underlying Complaint

19  conceivably alleges that Plaintiffs misappropriated KCMA's advertising idea,

20  which triggered Defendant's duty to defend.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

1    ### 3. Slogan Infringement

2    Plaintiffs next contend Defendant's duty to defend was triggered because

3    Plaintiffs infringed upon KCMA's slogan.  ECF No. 17 at 18–22.  Defendant

4    argues slogan infringement was not alleged in the Underlying Complaint.  ECF

5    No. 26 at 14.

6    The Ninth Circuit defines a "slogan" as a "brief attention-getting *phrase*

7    used in advertising or promotion, or a *phrase* used repeatedly, as in a promotion."

8    *St. Surfing, LLC v. Great Am. E & S Ins. Co.*, 776 F.3d 603, 608 (9th Cir. 2014)

9    (internal brackets and quotations omitted) (emphasis in original).  In certain

10    instances, courts have found trademarks can also function as slogans.  *See, e.g.*,

11    *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264 (9th Cir. 2010) (applying

12    California law).  Plaintiffs urge the Court to follow *Hudson Ins. Co.* and find the

13    factual allegations in the Underlying Complaint allege potential claims of slogan

14    infringement.  ECF No. 17 at 22.

15    In that case, the insured allegedly made and sold counterfeit NFL jerseys

16    that read "Steel Curtain" across the back, which was a registered trademark of the

17    Pittsburgh Steelers.  *Hudson Ins. Co.*, 624 F.3d at 1265–66.  The underlying

18    complaint did not specifically allege a claim for slogan infringement, but the Ninth

19    Circuit held the "Steel Curtain" trademark could function as a slogan because it

20    was a brief attention-getting phrase used to promote fan loyalty.  *Id.* at 1268.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

1    The same can be said of the KCMA mark.  The KCMA certification mark is

2    label graphically represented by the words "certified cabinet" in curved font,

3    forming a circle around the phrase "complies with KCMA."  *See* ECF No. 26 at

4    16.  The mark is used to signify compliance with certain industry standards, which

5    is desirable for consumers.  *See* ECF No. 18-4 at 16, ¶ 54.  The Underlying

6    Complaint alleges Plaintiffs used the mark to attract new customers based on

7    consumers' preference for the KCMA brand.  *See id*. at 15, ¶ 50.  Taken together,

8    the KCMA mark is a short attention-grabbing phrase that is used to promote brand

9    loyalty.  The Underlying Complaint conceivably states a claim for slogan

10   infringement and Defendant had a duty to defend.

11        **C.    Policy Exclusions**

12        The parties dispute whether any policy exclusions apply.  Defendant argues

13   the intellectual property exclusion, the quality of goods exclusion, and the knowing

14   exclusion all apply and bar coverage for any alleged advertising injury.  ECF No.

15   19 at 16–20.  Plaintiffs argue there are no factual allegations in the Underlying

16   Complaint to support Defendant's reliance on any policy exclusion.  ECF Nos. 17

17   at 22–25; 27 at 23–25.   The insurer bears the burden of proving applicability of an

18   exclusion from coverage.  *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wash.

19   2d 654, 674 (2000).  Exclusionary clauses are strictly construed against the insurer.

20   *Alea London, Ltd.*, 168 Wash. 2d at 406.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

### 1. *Intellectual Property Exclusion*

The Policy contains a standard intellectual property exclusion that bars coverage for "Personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade dress or other intellectual property rights." ECF No. 21-6 at 9. The exclusion does not apply to "infringement, in your 'advertisement', of copyright, trade dress or slogan." ECF No. 21-6 at 9.[4] Defendant argues all factual allegations in the Underlying Complaint relate only to trademark infringement. ECF No. 19 at 16. However, the Court determined the KCMA mark could also serve as a slogan. Thus, the exception to the exclusion applies and Defendant cannot rely on the intellectual property exclusion to avoid its duty to defend.

### 2. *Quality of Goods*

Defendant next contends the policy exclusion barring coverage for injury arising out of a failure of goods to conform to a statement of quality applies. ECF No. 19 at 17. Plaintiffs argue that Defendant misrepresents the allegations in the Underlying Complaint. ECF No. 17 at 24.

---

[4]     According to Black's Law Dictionary, Ninth Edition, "trade dress" for a product typically comprises packaging and labeling.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1    Policy exclusion "g" bars coverage for "'Personal and advertising injury'

2    arising out of the failure of goods, products or services to conform with any

3    statement of quality or performance made in [the insured's] 'advertisement'."  ECF

4    No. 21-6 at 8.  As Plaintiffs properly indicate, KCMA did not inspect the cabinets

5    to determine whether they in fact failed to conform to KCMA standards.  ECF No.

6    18 at 12, ¶ 31.  Moreover, the quality of Plaintiffs' goods is irrelevant to at least

7    two of the claims (slogan infringement and misappropriation of an advertising

8    idea) giving rise to Defendant's duty to defend.  As such, Defendant cannot rely on

9    exclusion "g" to deny coverage where the failure to conform with a stated quality

10    standard was not actually established.

11    ### 3.  Material Published Prior to Policy Period

12    Defendant argues the exclusion barring coverage for material published prior

13    to the policy period applies.  ECF No. 19 at 18.  Plaintiffs argue there are no

14    allegations in the Underlying Complaint that the wrongful conduct occurred before

15    the policy coverage period began.  ECF No. 27 at 24.

16    Policy exclusion "c" bars coverage for "'Personal and advertising injury'

17    arising out of oral or written publication, in any manner, of material whose first

18    publication took place before the beginning of the policy period.  ECF No. 21-6 at

19    8.  The policy coverage period began on January 2, 2018.  ECF No. 18 at 3, ¶ 4.

20    The factual allegations in the Underlying Complaint refer only to conduct that

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17

occurred in 2018.  ECF No. 30 at 3, ¶ 4.  Any other dates cited in the Underlying

Complaint relate to the period of time in which Plaintiffs were certified cabinet

producers.  *See, e.g.*, ECF No. 18-4 at 10, ¶ 33; at 12, ¶ 41.  Defendant claims that

coverage is barred "to the extent the Underlying Complaint alleges [Plaintiffs']

trademark violations have been taking place since its certification lapsed in 2006,"

yet Defendant cannot point to any allegations of infringement predating 2018.

ECF No. 19 at 18.  Therefore, Defendant has failed to carry its burden to prove the

prior publication exclusion applies.

### 4. *Knowledge of Violation and Falsely Published Material*

Next, Defendant argues policy exclusions "a" and "b" apply because the

Underlying Complaint alleges Plaintiffs knowingly violated KCMA's rights and

knew the application of the KCMA certification mark to their cabinets was a

falsity.  ECF No. 19 at 19.  Plaintiffs claim Defendant had a duty to investigate

whether Plaintiffs acted with knowledge and that the "knowing exclusion" applies

only to torts that cannot be committed accidentally or negligently.[5]  ECF No. 17 at

22.

---

[5]       Plaintiffs' argument that the exclusion for knowing violations applies only to

torts that cannot be committed negligently or accidentally is unpersuasive.

Plaintiffs' case citation involved a claim for tortious interference with the parent-

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18

1    Policy exclusion "a" bars coverage for "'Personal and advertising injury'

2    caused by or at the direction of the insured with the knowledge that the act would

3    violate the rights of another and would inflict 'personal and advertising injury'."

4    ECF No. 21-6 at 8.  Policy exclusion "b" bars coverage for "'Personal and

5    advertising injury' arising out of oral or written publication, in any manner, of

6    material, if done by or at the direction of the insured with knowledge of its falsity."

7    *Id*.  The Underlying Complaint alleges only intentional conduct.  However, other

8    courts have found a duty to defend existed where the underlying complaint alleged

9    only intentional acts but there was a possibility that subsequent development in the

10   litigation could have revealed only negligent or accidental acts.  *See KM Strategic*

11   *Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1171 (C.D. Cal.

12   2015).

13       Such is the case here.  As one court noted, "That the precise causes of action

14   pled by the third-party complaint may fall outside policy coverage does not excuse

15   the duty to defend where, under the facts alleged, reasonably inferable, or

16   otherwise known, the complaint could fairly be amended to state a covered

17   _____

18   child relationship.  *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 766 (2013).

19   The holding was narrowly applied only to that particular type of claim; there is

20   nothing to suggest the Washington Supreme Court intended a broader application.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 19

liability." *Storek v. Fid. & Guar. Ins. Underwriters, Inc.*, 504 F. Supp. 2d 803, 809 (N.D. Cal. 2007), *aff'd,* 320 F. App'x 508 (9th Cir. 2009) (citation and internal brackets omitted).  Notably, the Underlying Litigation was settled with a stipulation that Plaintiffs' alleged wrongdoing was due to an internal misunderstanding.  ECF No. 18 at 12, ¶ 32.  Had Defendant consulted with Plaintiffs when the Underlying Complaint was filed, it may have learned facts that would have triggered its duty to defend.  *See Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 54 (2007) ("[I]f the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer, or if the allegations . . . are ambiguous or inadequate, facts outside the complaint may be considered.  The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty.") (internal quotations and citations omitted).  The allegations of intent could merely constitute surplusage.  Consequently, the duty to defend was triggered at the outset of the litigation because Defendant could have readily ascertained facts indicating Plaintiffs did not act with knowledge of wrongdoing.

### 5.  Breach of Contract

Defendant claims that Plaintiffs' use of the KCMA certification mark after the expiration of the licensing agreement constitutes breach of contract, which is

1  excluded from coverage.  ECF No. 19 at 20.  Plaintiffs argue the Underlying

2  Complaint did not assert a claim for breach of contract.  ECF No. 27 at 24.

3      Exclusion "f" bars coverage for "'Personal and advertising injury' arising

4  out of a breach of contract, except an implied contract to use another's advertising

5  idea in your 'advertisement'."  ECF No. 21-6 at 8.  The Underlying Complaint

6  does not allege a claim for breach of contract.  In any event, to the extent any

7  allegations in the Underlying Complaint are premised on a breach of contract, the

8  breach of contract theory was disputed in the underlying litigation.  *Compare*

9  *Kitchen Cabinet Manufacturers Association v. AAA Cabinets & Millworks Inc. et*

10  *al.*, 2:19-CV-0291-SMJ, ECF No. 31 at 15 *with id.*, ECF No. 39 at 6.  Therefore,

11  Defendant had a duty to defend until it obtained a declaratory judgment releasing it

12  from its duty.  *See Alea London, Ltd.*, 168 Wash. 2d at 404.  Defendant cannot rely

13  on the breach of contract exclusion.

14      Based on the foregoing, there are no genuine disputes of material facts that

15  the Underlying Complaint conceivably alleged facts that triggered Defendant's

16  duty to defend Plaintiffs in the Underlying Litigation.  Plaintiffs are entitled to

17  partial summary judgment.

18  //

19  //

20  //

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 21

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 17) is **GRANTED**.

2. The Court **FURTHER FINDS AND DECLARES** Defendant had a duty to defend Plaintiffs for any claims raised against them in *Kitchen Cabinet Manufacturers Association v. AAA Cabinets & Millworks Inc. et al.*, 2:19-CV-0291-SMJ, based on the coverage provisions found under Policy Nos. ACP GLAO 3008327080, ACP GLAO 3018327080, and ACP GLAO 3028327080, and ACP CAA 3008327080, ACP CAA 301832708, and ACP CAA 302832708.

3. Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**.

4. Defendant's duplicative Motion for Summary Judgment (ECF No. 14) **DENIED** as moot.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED August 17, 2021.



THOMAS O. RICE
United States District Judge

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22